IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No.: 5:25-cv-49

| | | |
|---|---|---|
| MELANIE SANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| FERGUSON ENTERPRISES, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

1. Melanie Sanderson ("Plaintiff" or "Melanie") began working for Ferguson Enterprises, LLC ("Defendant" or the "Company") on or around March 18, 2021. Melanie worked hard at her job and did good work. The Company never put her on notice of any alleged performance deficiencies. In fact, the Company frequently acknowledge Melanie's positive performance, and it did so most recently in the same month it fired her.

2. Melanie suffered a triple fracture in her shoulder and received a long COVID diagnosis. Those disabilities necessitated time off of work and reasonable accommodations. In September 2023, the Company approved Melanie's ADA reasonable accommodation request to continue working at its Mooresville, North Carolina office. She was the only one of her peers who continued to work there—the rest moved to the Charlotte office in August 2023, but the Company allowed Melanie to stay as a reasonable accommodation. On or around January 18, 2024, the Company terminated Melanie's employment, claiming her

1

termination was part of a Reduction-In-Force ("RIF"). In entire Charlotte District, the Company only selected Melanie. It was essentially a RIF of one, and the Company actually fired her on the basis of her disability or her reasonable accommodations.

3. Plaintiff now turns to this Court to be made whole for her harms and losses. Plaintiff brings this action against Defendant for violations of the Americans with Disabilities Act ("ADA") (Count I), the Family and Medical Leave Act ("FMLA") (Count II), and Wrongful Discharge in violation of North Carolina Public Policy (Count III).

## II. PARTIES, JURISDICTION AND VENUE

4. Plaintiff resides in Iredell County, North Carolina.

5. Ferguson Enterprises, LLC is a Virginia limited liability company, with its principal office located at 751 Lakefront Commons, Newport News, VA 23606.

6. Defendant's home state name is Ferguson Enterprises, LLC.

7. Defendant's legal name in North Carolina, according to the Secretary of State is "Ferguson Enterprises, LLC of Virginia."

8. Defendant's registered agent is Corporate Creations Network Inc, with its registered address located at 15720 Brixham Hill Avenue #300, Charlotte NC 28277.

9. Plaintiff worked for Defendant at its 185 Raceway Drive, Mooresville, North Carolina 28117 location.

10. Venue is proper in the Western District of North Carolina, Statesville Division, because: Plaintiff worked for Defendant in Iredell County. But for Defendant's illegal conduct, Plaintiff would have continued working in Iredell County, North Carolina.

## III. FACTUAL STATEMENT

11. Melanie began working for the Company on or around March 18, 2021. Throughout her first several months on the job, Melanie was, by all accounts, a productive employee The Company never had any issues with her work performance.

12. On or around September 9, 2021, Melanie injured herself while playing a game of pickleball. She suffered a triple fracture in her left shoulder. Melanie remained out of work for approximately three months following the injury.

13. Melanie fully informed the Company of her injury and disability and it approved her leave as a reasonable accommodation.

14. On or around December 15, 2021, Melanie returned to work. After being on the job for several days, Melanie contracted COVID and was again out of work until on or around January 3, 2022. On or around July 14, 2022, Melanie's doctor diagnosed her with Long COVID.

15. Long COVID is a chronic condition that causes tiredness, fatigue, difficulties concentrating, shortness of breath, difficulty breathing, headaches, dizziness, chest pain, joint pain, muscle pain, depression, anxiety, and heart palpitations. In Melanie's case, it amounted to a disability under the Americans with Disabilities Act ("ADA").

16. Long COVID often affects one or more body systems, including but not limited to, the neurological, respiratory, cardiovascular, and circulatory systems. This was the case for Melanie, as well, with some symptoms persisting to this day.

17. On or around August 8, 2023, the Company announced that Melanie and her peers would need to begin working in the Company's Charlotte office. Up until that point, Melanie

had worked exclusively at the Company's Mooresville office, which was significantly closer to her home.

18. Melanie consulted with her doctor, who did not believe she would be in a condition to undertake the longer commute to the Charlotte office due to her Long COVID disability diagnosis.

19. On or around September 7, 2023, Melanie applied for an ADA accommodation to continue working in the Mooresville office.

20. At around the same time, Melanie also requested for intermittent leave under the FMLA due to her disability.

21. The Company approved both Melanie's ADA and FMLA requests.

22. On or around December 21, 2023, Melanie once again contracted COVID and was out of work until January 2, 2024.

23. On January 18, 2024, the Company terminated Melanie's employment.

24. The Company alleged it fired Melanie as part of a RIF.

25. Melanie was the only employee selected in the Company's Charlotte District for the alleged RIF.

26. Though Melanie was the only one of her peers working at the Mooresville location, this was specifically her ADA accommodation.

27. Defendant fired Plaintiff because of her real or perceived disability and her request for a reasonable accommodation.

28. Defendant also failed to accommodate Plaintiff by firing her and ending the accommodation.

29. Melanie later contacted human resources and her boss, Carmen Nichols, to inquire about her termination. Nichols assured Melanie her termination was not performance related.

30. However, the Company later told the U.S. Equal Employment Opportunity Commission ("EEOC") that, actually, it did fire Melanie due to performance.

31. The Company's statement to the EEOC is pretextual. Melanie can show that, instead of being a poor performer, she consistently received accolades from Defendant and was never counseled on her performance.

32. The distinguishing factor was Plaintiff's disability and reasonable accommodation.

33. On May 23, 2024, Melanie filed a Charge of Discrimination with the EEOC.

34. On January 8, 2025, the EEOC issued Melanie her Notice of Right to Sue letter.

## IV. LEGAL CLAIMS

### Count I
(*Violation of the Americans with Disabilities Act*)

35. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

36. Plaintiff was disabled in that she had physical impairments that substantially limited one or more major life activities, including, but not limited to, his ability to work and perform physically enduring tasks for a certain period of time. Plaintiff's condition limited the following major life activities and/or bodily functions, including but not limited to: thinking, concentrating, performing manual tasks, breathing, communicating, interacting with others, lifting, eating, sleeping, driving, and moving.

37. Defendant otherwise regarded Plaintiff as disabled at the time of her termination.

38. Plaintiff engaged in protected activity when she, in good faith, requested or otherwise needed reasonable accommodations.

39. Plaintiff received reasonable accommodations from Defendant, including but not limited to leaves of absences from work and the ability to continue working from the Mooresville office.

40. Plaintiff suffered an adverse employment action when Defendant terminated her employment on the basis of her disability.

41. Plaintiff suffered an adverse employment action when Defendant terminated her employment on the basis of her requesting and/or receiving a reasonable accommodation.

42. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, emotional distress, physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

43. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## Count II
***(Violations of the Family and Medical Leave Act)***

44. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

45. Plaintiff required leave protected under the Family and Medical Leave Act, including intermittent leave, because of her own serious health conditions. Plaintiff was employed by Defendants for 12 months and worked at least 1,250 hours during the 12 months prior to the start of her requested leave.

46. Defendant employs 50 or more employees within a 75-mile radius pursuant to 29 C.F.R. § 825.111.

47. Plaintiff was entitled to FMLA leave. Defendant's decision to terminate Plaintiff while on FMLA leave interfered with her right to take FMLA leave. Defendant's action was related to Plaintiff's exercise of her FMLA rights.

48. Plaintiff engaged in protected activity by requesting FMLA leave and by otherwise altering Defendant to her need to take time off due to her own serious health conditions. Defendant took an action that a reasonable employee would have found materially adverse. There exists a causal connection between Plaintiff's protected activity and Defendant's adverse action.

49. Defendant's explanations for Plaintiff's termination amount to pretext for unlawful discrimination, retaliation, and interference.

50. Defendant violated the FMLA when it terminated Plaintiff's employment in retaliation for her request for time off because of her own serious health conditions.

51. Defendant also violated the FMLA when it interfered with her right to take FMLA leave.

52. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical

distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

53. Defendant's actions were not in good faith. Nor did Defendant have objectively reasonable grounds to believe it was not violating the FMLA. Defendant's actions were done willfully and in a manner that demonstrates a reckless disregard for Plaintiff's rights under the FMLA. As a result of Defendant's conduct, Plaintiff is entitled to recover liquidated damages.

54. Defendant's violation of the FMLA was willful, subjecting it to a three-year statute of limitations on this claim.

## Count III
(*Wrongful Discharge in Violation of North Carolina Public Policy*)

55. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

56. Plaintiff was an at-will employee of Defendant.

57. Defendant employed at least fifteen (15) employees at all relevant times.

58. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a) seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of disability ("handicap").

59. Defendant violated the public policy of North Carolina by terminating Plaintiff because Defendant regarded Plaintiff as having a physical or mental impairment which substantially limits one or more major life activities.

60. Plaintiff qualified as an individual with a disability in that she was actually disabled/handicapped and was perceived as such.

61. Defendant violated North Carolina public policy by terminating Plaintiff because of actual or perceived disability and/or handicap.

62. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, diminution in her earning capacity, emotional distress, damage to her reputation, anxiety, depression, embarrassment, humiliation, and her peace of mind has been disturbed.

63. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## **JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment again Defendant and order the Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff's punitive damages under and N.C. Gen. Stat. § 1D-15 and the ADA;

3. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.;*

4. Award Plaintiff liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii);

5. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

9

Case 5:25-cv-00049-KDB-DCK   Document 1   Filed 04/04/25   Page 9 of 10

6. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

7. Grant Plaintiff a trial of this matter by a jury.

This the 4th day of April, 2025.

/s/ Sean F. Herrmann
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Avenue Ste. 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com
*Attorneys for Plaintiff*